IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JOHN WESLEY MCDONALD,

    Plaintiff,

v.                                     CASE NO.  5:13-cv-396-RS-GRJ

FAMILY DOLLAR SERVICES, INC.,

    Defendant.
_____/

## ORDER

Before me are Defendants' Motion for Final Summary Judgment (Doc. 47) and Plaintiff's Response and Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. 57). After considering the pleadings and the evidence before me, I find that the relief requested in Defendants' Motion for Final Summary Judgment (Doc. 47) is **GRANTED in part**.

## STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in

deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

An issue of fact is material "if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Wright v. Sandestin Investments, LLC,* 914 F. Supp. 2d 1273, 1278 (N.D. Fla. 2012). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## BACKGROUND

I will accept the facts in the light most favorable to the Plaintiff. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)). "'All reasonable doubts about the facts should be

resolved in favor of the non-movant.'" *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

Plaintiff began his employment with Defendant Family Dollar Services, Inc. in May 2011 as a Shipping Loader. Doc. 59. Shipping Loaders are responsible for loading and strategically stacking boxes of product onto shipping trailers for distribution. *Id*. While he was employed with Defendant, Plaintiff suffered two work place injuries.

Plaintiff's first injury occurred about three months after he began to work for Defendant. *Id*. On July 7, 2011, Plaintiff injured himself while loading a trailer. *Id*. In Plaintiff's coaching file log, his manager reported that on July 13, 2011, and July 14, 2011, Plaintiff missed work due to "illness." Doc. 58-1 at 81. The coaching session states that his manager spoke with him on July 17, 2011, and Plaintiff told his manager that he was "feeling a little bit better but may get it checked out." *Id*. Then, on July 19, 2011, the coaching file log indicates that on July 19, 2011, twelve days after the work accident, Plaintiff reported the accident. *Id.* According to the log, Plaintiff "Had chest pains that did not go away" and his manager "Explained to him that he needed to lift properly and not twist with a load." *Id*.

On the Workers' Compensation form Plaintiff's description of the accident is that "he was loading a trailer and stacking . . . totes. He felt pain in the middle of his chest from all the lifting. No medical attention has been sought . . ." *Id.*, at 155. Coaching sessions are used to note positive and negative employee coaching. *Id.* at 78. Coaching sessions themselves are not disciplinary actions. Shortly after Plaintiff returned to work, August 2011, he received a satisfactory merit status update with no demerits. Doc. 48.

Plaintiff did not receive a corrective action until December 2011, five months after his accident. Doc. 58-1 at 98. Plaintiff was disciplined because after "many discussions and coaching sessions regarding your overall performance . . ." he did not improve his performance. *Id*. His coaching file notes that within the month prior to the December 2011 corrective action, Plaintiff was negatively coached for damages inside his trailer, misusing company time, reliability, load quality, and loading chemicals over food. *Id*.

The second injury occurred on November 21, 2012. On this date, a twenty-five pound fan fell and struck Plaintiff while he was at work. Doc. 59. Plaintiff's emergency room medical records indicate that Plaintiff rated the severity of the pain as a 4 (0-10 scale), presented with a headache and neck pain, but was not confused or weak. Doc. 58-1 at 141-2. After examining Plaintiff, the doctor did not

order a CT scan; he diagnosed Plaintiff with a closed head injury. *Id.* at 143. Plaintiff was discharged the same day as "good and stable"; he was prescribed twenty (20) pills each of Flexeril (muscle relaxer), Loratab (as needed for pain), and Motrin (muscle relaxer). *Id.* at 145. The emergency room doctor wrote a note stating that Plaintiff could return to work on November 26, 2012, with no restrictions specified. *Id.* After his discharge from the hospital, Plaintiff began the necessary steps to file a claim for workers' compensation benefits. Doc. 59.

Despite receiving clearance to return to work, Plaintiff did not return to work until December 18, 2012, approximately twenty-six days after the accident. *Id*. In his coaching file, his manager noted that Plaintiff called on December 10, 2012, and told his manager for the first time that he was seen by the doctor on December 4, 2012, and that he could not return to work because he did not have gas money and the medicine the doctor gave him was too strong to drive. Doc. 58-1 at 85. The December 4, 2012, doctor's note released him to work with limited restrictions. Doc. 59. The next day, on December 11, 2012, Plaintiff called out of work again because of pain. Doc. 58-1 at 85. On December 12, Plaintiff called out of work because he was incapable of driving due to the medicine he was on, and December 13, Plaintiff was a no call/no show. *Id*.

Although Plaintiff received coaching sessions for calling out of work despite having a doctor's note to return to work, and for being a no call/no show, Defendant did not issue Plaintiff a corrective action. Doc. 59.Instead, Defendant approved all of Plaintiff's absences, and Plaintiff returned to work on December 18. *Id*. Plaintiff's manager, Sean Byrom, testified in deposition that he did not issue a corrective action or any repercussions, despite his concern over Plaintiff's reliability, because he understood Plaintiff might miss some days after the work related injury. Doc. 58-1 at 70.  Plaintiff did not apply for FMLA. Doc. 59. However, Defendant did not provide Plaintiff with information or forms necessary to apply for FMLA. *Id*.

After returning to work, on December 20, 2012, Plaintiff was coached three times during the same shift that Plaintiff was not allowed to "listen to music or wear ear buds" in any area except the shipping area where the trailers were being loaded. Doc. 59. Maintenance Manager Alan Warf saw Plaintiff with ear buds in his ear, and told him that he was not allowed to "listen to music **or** wear ear buds in his ear." *Id.* (emphasis added). Because Plaintiff claimed the noise was giving him a headache, Mr. Warf told him he would bring him safety ear plugs to block some of the noise. *Id*. Ten minutes later, Mr. Warf brought Plaintiff the safety ear plugs and saw that Plaintiff had placed the ear buds back in his ear, this time

without the music. *Id*. Mr. Warf further reminded Plaintiff that "the only place in the building you're allowed MP3 players and earphones is in the trailers and the shipping department." Doc. 48. In deposition, Plaintiff testified that when Mr. Warf handed him the safety ear plugs he remembered Mr. Warf telling him that he was only allowed to wear the ear buds in the shipping area. *Id*.

Plaintiff admits that when he returned to the office later the same night to complete paperwork he replaced the safety ear plugs with his ear buds and continued to listen to music. Doc. 59. While in the office, Department Manager Dexter Bryant approached Plaintiff and, for the third time that night, told him that he was not allowed to wear ear buds in any location except the shipping area. *Id*. Having received three negative coaching sessions for the same violation during the same shift, Plaintiff was terminated for insubordination effective on December 21, 2012. *Id*.

Plaintiff filed this complaint alleging workers' compensation retaliation, interference with Plaintiff's rights under the Family and Medical Leave Act (FMLA), and retaliation under the FMLA. Doc. 1.

## ANALYSIS

In Defendants' motion for summary judgment, Defendant argues that Plaintiff cannot establish a *prima facie* case of workers' compensation retaliation,

FMLA interference, or FLMA retaliation. Doc. 47. In response, Plaintiff claims he has established a *prima facie* case on both counts. Doc. 57.

*Workers' Compensation Retaliation*

In Count I of Plaintiff's complaint, Plaintiff alleges that Defendant violated §440.205, Florida Statutes, which prohibits an employer from coercing, retaliating against or otherwise adversely affecting an employee who attempts to or does claim entitlement to worker's compensation benefits under the laws of the State of Florida. Doc. 1. To establish a *prima facie* case for retaliatory discharge under § 440.205,Florida Statutes, Plaintiff must prove: "(1) he engaged in a statutorily protected activity; (2) an adverse employment action occurred; and (3) the adverse action was causally related to the employee's protected activity." *Ortega v. Eng'g Sys. Tech., Inc.*, 30 So. 3d 525, 528 (Fla. 3d DCA 2010).

Workers' compensation "retaliation claims brought under § 440.205 are subject to the same burden shifting analysis applicable to Title VII claims." *Humphrey v. Sears, Roebuck* & Co., 192 F. Supp. 2d 1371, 1374 (S.D. Fla. 2002). Once Plaintiff has established a *prima facie* case of retaliation, the burden shifts to the Defendant to proffer a legitimate reason for the adverse employment action. *Ortega*, 30 So. 3d at 529. Next, the Plaintiff must produce sufficient evidence to "permit a reasonable finder of fact to conclude the employer's

proffered reasons were not what actually motivated its conduct, or that the proffered reasons are not worthy of belief. *Id.* In these cases, summary judgment in favor of the Defendant is appropriate only if Plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."*Id.*

Here, it is undisputed that Plaintiff engaged in a statutorily protected activity by filing a workers' compensation claim, and that he suffered an adverse employment action when he was terminated on December 2012. Defendants, however, argue that Plaintiff's termination was not causally related to the employee's protected activity. Doc. 47. Alternatively, if Plaintiff has established a *prima facie* case for retaliation, Defendant argues that it has articulated a legitimate, non-retaliatory reason for Plaintiff's termination. *Id*. On the other hand, Plaintiff argues that he has established a *prima facie* case of retaliation and that Defendant's reasons for its adverse actions are a pretext for retaliatory motives. Doc. 57.

In Plaintiff's response to Defendant's motion for summary judgment, Plaintiff states that he engaged in a statutorily protected activity when he sought and received workers' compensation benefits after both the July 2011 work related

injury and the November 2012 work related injury. *Id*. After a plaintiff establishes that he engaged in protected activity, a plaintiff must show that he suffered an adverse employment action that is "harmful to the point that they could well dissuade a reasonable worker from making or supporting" a claim for workers' compensation. *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57, 126 S.Ct. 2405, 2409 (2006*)*. Although "not all conduct by an employer negatively affecting an employee constitutes adverse employment action," *Gray v. City of Jacksonville, Fla.,* 492 F. App'x 1, 8 (11th Cir. 2012), the Eleventh Circuit has recognized actions that, "in some substantial way, 'alter[ ] the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect . . . his or her status as an employee.'" *Vinson v. Dep't of Corr., Florida*, 672 F. Supp. 2d 1247, 1255 (N.D. Fla. 2009) (citing *Crawford v. Carroll,* 529 F.3d 961, 970 (11th Cir.2008)).

After the July 2011 work related injury Plaintiff sought and received workers' compensation benefits. Doc. 57. Plaintiff contends that the coaching session, entered twelve days after the work accident, is an adverse employment action. *Id*. The coaching session reflected that Plaintiff reported the accident and that his manager "Explained to him that he needed to lift properly and not twist with a load." Doc. 58-1 at 81. There are no allegations in the record that after the

July 2011 incident Plaintiff suffered a corrective action, demotion, alteration in Plaintiff's compensation, or any action that could dissuade a reasonable worker form making or supporting a claim for workers' compensation. Moreover, Plaintiff was unaware of the coaching session in his Coaching File. Accordingly, Plaintiff has not established a *prima facie* case for retaliation as it relates to the July 2011 application for workers' compensation.

As for the November 2012 application for workers' compensation, it is undisputed that Plaintiff was terminated the following month. Doc. 47. It is further undisputed that termination is clearly an adverse employment action. Next, a plaintiff must establish there was some causal connection between the protected activity and the adverse employment action. *See Forbes v. City of N. Miami,* 509 Fed. Appx. 864 (11th Cir. 2013). To succeed, a plaintiff must only show "that the protected activity and the adverse action are not completely unrelated." *Gray v. City of Jacksonville, Fla.,* 492 F. App'x 1, 9 (11th Cir. 2012). A plaintiff may make this showing by merely demonstrating that the defendant was aware of the protected activity at the time of the adverse employment actions. *See Raney v. Vinson Guard Serv., Inc.,* 120 F.3d 1192, 1197 (11th Cir. 1997). The Defendant terminated Plaintiff less than a month after Plaintiff filed for workers' compensation, and Defendant knew Plaintiff had made such filing. Therefore,

Plaintiff has established a *prima facie* case for retaliation as it relates to the November 2012, application for workers' compensation.

Because Plaintiff has established a prima facie case for retaliation, the burden shifts to Defendant to rebut the presumption of retaliation by providing a legitimate, non-discriminatory reason for the adverse employment action, which would then require the Plaintiff to show that the employer's proffered reasons for taking adverse action were merely pretextual.  Defendant contends that it terminated Plaintiff's employment because Plaintiff failed to follow Defendant's safety procedure and his supervisor's directives three times on one shift. Doc. 47. In response, Plaintiff claims that the reason for his termination was pretextual. Doc. 57.

According to Plaintiff, Plaintiff had worn ear buds in the offices and outside the shipping area throughout his employment without receiving any corrective action, coaching session, or verbal command that it was a violation of policy. *Id*. Additionally, Plaintiff witnessed other employees do the same without disciplinary action being taken against them. *Id*. Therefore, according to Plaintiff, even though Plaintiff was aware that it was Defendant's policy to not allow ear buds outside the shipping area, Defendant's decision to abruptly begin enforcing the policy is suspicious and thus gives rise to an inference of pretext.

Taking the facts in the light most favorable to Plaintiff, I agree. Mr. Warf told Plaintiff that he was not allowed to "listen to music or wear ear buds in his ear" outside the shipping area. Doc. 59. In context, it is reasonable to believe that Mr. Warf and Plaintiff understood Mr. Warf's statement to prohibit Plaintiff from listening to music, and not specifically from having anything in his ears other than the safety plugs Mr. Warf gave him. Moreover, when Mr. Warf told Plaintiff he could not listen to music or wear the ear buds, Plaintiff removed the ear buds from the music player. Then, when Mr. Warf gave him the safety plugs, Plaintiff immediately replaced the ear buds with the safety plugs. Additionally, Plaintiff had listened to music in the office while he completed his paper work on a number of prior occasions, without discipline. Therefore, Defendant's decision to enforce the policy a few days after Plaintiff returned from leave and less than a month after he filed for workers' compensation could be found by a reasonable factfinder that Defendant's reason for termination is unworthy of credence.

Accordingly, Defendant's motion for summary judgment on the issue of workers' compensation is denied.

*FMLA interference and Retaliation*

The FMLA entitles eligible employees to 12 weeks of medical leave per year for serious health conditions. 29 U.S.C. § 2612(a)(1). A serious health

condition is one that "makes employee unable to perform the functions of the position of such employee." 29 U.S.C.A. § 2612.

FMLA "creates a private right of action to seek both equitable relief and money damages 'against any employer (including a public agency) in any Federal or State court of competent jurisdiction' should that employer 'interfere with, restrain, or deny the exercise of' FMLA rights." *Nevada Dep't of Human Resources v. Hibbs,* 538 U.S. 721, 724-25 (2003) (internal citations omitted). To establish a claim for FMLA interference, Plaintiff must show he was denied some benefit to which he was entitled under FMLA. *Strickland v. Water Works & Sewer Bd.,* 239 F.3d 1199, 1206 (11th Cir. 2001). In contrast, to succeed on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right. *Id.* at 1207.

It does not appear from the record that Plaintiff has established a *prima facie* case of FMLA interference or retaliation claim. An employee must actually qualify for FMLA leave in addition to providing appropriate notice to assert a valid interference or retaliation claim. *Hurley v.Kent* of *Naples, Inc.,* 746 F.3d 1161, 1167 (11th Cir. Fla. 2014). Plaintiff argues, however, that Defendant had actual notice of Plaintiff's need for FMLA leave because it had notice of the injury in

November 2012 and that his injury was a serious health condition that required hospitalization. Doc. 57.

Under the Code of Federal Regulations, an employee's FMLA notice is valid if he provides "at least verbal notice sufficient to make the employer aware that the employee needs FMLA–qualifying leave . . . ." 29 C.F.R. § 825.302(c). For instance, the employee must make the employer aware that the employee "has been hospitalized overnight" or that the employee is "under the continuing care of a health care provider." 29 C.F.R. § 825.302. "The phrase 'serious health condition' is defined objectively, not subjectively." *Baggish v. Clear Wireless, LLC*, 2012 WL 3538712, at *2 (N.D. Fla. 2012). A "serious health condition" is defined as "an illness, injury, impairment or physical or mental condition that involves inpatient care as defined in § 825.114 or continuing treatment by a health care provider as defined in § 825.115." 29 C.F.R. § 825.113(a).

In *Baggish*, the Northern District of Florida described the FMLA's legislative history:

> The legislative history of the FMLA provides examples of the sort of ailments that Congress intended the statute to cover: Examples of serious health conditions include but are not limited to heart attacks, heart conditions requiring heart bypass of [sic] valve operations, most cancers, back conditions requiring extensive therapy or surgical procedures, strokes, severe respiratory conditions, spinal injuries, appendicitis, pneumonia, emphysema, severe arthritis, severe nerve disorders, [and] injuries caused by serious accidents on or off the job

> …. All of these conditions meet the general test that either the underlying health condition or the treatment for it requires that the employee be absent from work on a recurring bases or for more than a few days for treatment or recovery. They also involve *either inpatient care or continuing treatment or supervision by a health care provider*, and frequently involve both.

2012 WL 3538712, at *4 (N.D. Fla. 2012)(citations omitted)(emphasis added).

Plaintiff presented to the emergency room with complaints of a head injury, and was released in stable condition after a medical evaluation the same day. On two separate occasions, including his release from the hospital, he had a doctor's note that he could return to work. Plaintiff's use (and perhaps misuse) of the prescribed medication does not transform an otherwise non-qualifying injury into a FMLA-qualifying injury.

Plaintiff did not provide Defendant with sufficient notice that he needed FMLA-qualifying leave to trigger Defendant's duty to inform him of his right to apply for leave. To the contrary, Plaintiff provided Defendant with notice that on two separate occasions he was cleared to return to work. There is no evidence in the record that Plaintiff received inpatient treatment, continuing treatment, or supervision by a health care provider for the injury. Moreover, there is no evidence on the record, aside from his refusal to return to work, that he was incapacitated. Instead, there is ample evidence in the record that Plaintiff's head injury was a

non-serious work-related injury. Additionally, it is undisputed that Plaintiff did not apply for FMLA leave. Therefore, Defendant did not retaliate against Plaintiff for exercising an FMLA right. *See Strickland,* 239 F.3d at 1206.

Plaintiff's own subjective belief that he could not return to work does not qualify him for FMLA. Because Plaintiff did not qualify for FMLA leave, Plaintiff's claims of FMLA interference and retaliation must fail. Summary judgment as to this claim is therefore granted.

## **CONCLUSION**

The relief requested in Defendants' Motion for Final Summary Judgment (Doc. 47) is **GRANTED** as to Counts II of Plaintiff's Complaint (Doc. 1) which alleges violations of FMLA interference and retaliation. That count is **DISMISSED WITH PREJUDICE**. Because the federal question count is dismissed, I decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over the remaining state law claim, Count I, which is **DISMISSED without prejudice** subject to being refiled in state court. Additionally, Defendants' Motion *In Limine* (Doc. 69) is **DENIED as moot**.

Accordingly, the jury trial scheduled for October 6, 2014, and the pretrial conference scheduled for September 29, 2014, is cancelled. The Clerk is directed to close the case.

**ORDERED** on September 17, 2014.

<u>/S/ Richard Smoak</u>
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**